UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, et al.,

Plaintiffs,

v.

PROJECT FROGS, INC., et al.,

Defendants.

Case No.  21-cv-09727-AMO

**ORDER RE CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 104, 105, 108, 111, 115

This insurance coverage suit arises out of a California state court coordinated proceeding, which involved underlying disputes about a construction project for the South San Francisco Unified School District ("SSFUS").  Dkt. No. 97 ¶ 17.[1]  Plaintiffs are two insurance companies (hereafter "Travelers") seeking declaratory relief and equitable reimbursement against Defendants Project Frogs, Inc. and USS Cal Builders, Inc.  *Id*. ¶¶ 39-56.  Travelers also bring a claim for equitable contribution against Defendant Rockhill Insurance Company ("Rockhill").  *Id*. ¶¶ 57-64.

On December 9, 2025, Travelers and Rockhill filed motions for summary judgment as to the duty to defend in the underlying coordinated proceeding.[2]  Dkt. Nos. 104, 105.  On December 23, 2025, Project Frogs and USS Cal filed motions for partial summary judgment on the duty to defend and submitted a joint memorandum in support of their respective motions.  *See* Dkt. Nos. 111, 115, 116.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Travelers and Rockhill also filed limited joinders and oppositions to the other's motion disputing Rockhill's duty to contribute to the funding of the defense in the underlying coordinated proceeding.  *See* Dkt. Nos. 110, 123.

Having considered the parties' submissions, and with the benefit of oral argument on April 16, 2026, the Court **GRANTS** Travelers' and Rockhill's motion for summary judgment. Because the subcontracts relevant to this dispute are void, Travelers and Rockhill did not owe USS Cal or Project Frogs a duty to defend in the coordinated proceeding.

<div align="center">

**FACTUAL BACKGROUND**

</div>

The following facts are undisputed by the parties for purposes of this motion.

### A.    Construction Project

SSFUS entered into various contracts with USS Cal to perform work constructing and remodeling certain school campus facilities. Dkt. No. 97 ¶ 17. Based on these contracts (hereafter the "Prime Contracts"), USS Cal then entered into subcontracts with other entities to perform component parts of the construction project. These subcontractors included: Project Frogs; A.S.F. Electric, Inc. ("ASF"); T3 Inc. ("T3"); and Atlas Pellizzari Electric, Inc. ("Atlas"). *Id*. ¶¶ 24, 27. Subcontractor Project Frogs then further subcontracted with five entities regarding its portion of the project: ASF; Blazer Industries, Inc. ("Blazer"); Frank M. Booth, Inc. dba Valley Sheet Metal ("Valley Sheet"); Epic Metal Corporation ("Epic"); and Young Electric. Co. ("Young Electric"). *Id*. ¶ 25.

### B.    Insurance Policies

Each of the subcontractors involved in the SSFUS construction project, other than Project Frogs, held an insurance policy with either Travelers or Rockhill. Neither USS Cal nor Project Frogs were Named Insureds on any of the policies relevant to this suit. Rather, USS Cal and Project Frogs were included as Additional Insureds under the subcontractors' policies with Travelers and Rockhill. In sum, ASF and T3 included USS Cal as an Additional Insured under their Travelers policies, while ASF, Blazer, Valley Sheet, and Young Electric all included Project Frogs as an Additional Insured on their respective Travelers policies. *See* Dkt. Nos. 104-3 – 104-29 (insurance policies issued by Travelers to ASF, Blazer, T3, Epic, Valley Sheet, and Young Electric). USS Cal and Project Frogs do not dispute Travelers' assertion that subcontractor Epic's policy does not include Additional Insured coverage language. The Atlas subcontractor was a Named Insured under a Rockhill policy and included USS Cal as an Additional Insured. *See, e.g.*,

<div style="writing-mode: vertical-lr">United States District Court  
Northern District of California</div>

Dkt. No. 106-1.

Regarding the policies held by subcontractors T3, ASF, Valley Sheet, and Young Electric, the parties rely upon the following language from the Additional Insured Endorsement:

> 1. WHO IS AN INSURED - (SECTION II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
> a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and
>
> b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omission of such person or organization.

Dkt. No. 97 ¶ 14. Uniquely, the policy issued to subcontractor Blazer includes this additional language:

> The following is added to SECTION II – WHO IS AN INSURED:
>
> Any person or organization that is a vendor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for 'bodily injury' or 'property damage' that:
>
> a. is caused by an 'occurrence' that takes place after you have signed and executed that contract or agreement; and
>
> b. Arises out of 'your products' which are distributed or sold in the regular course of such vendor's business.
>
> The insurance provided to such vendor is subject to the following provisions:
>
> …
>
> b. The insurance provided to such vendor does not apply to:
>
> (1) 'Bodily injury' or 'property damage' for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
>
> …
>
> (6) Demonstration, installation, servicing or repair operations, except such operations performed at such vendor's premises in connection with the sale of 'your products;'

3

United States District Court
Northern District of California

*Id.* ¶ 15.

The Rockhill policies issued to Atlas between 2014 and 2017 also contain a similar Additional Insured endorsement:

> Any person or organization to which you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to (1) occurrences taking place after such written contract has been executed and (2) occurrences resulting from work performed by you during the policy period, or occurrences resulting from the conduct of your business during the policy period.
>
> A person or organization that qualifies as an "insured" under the above paragraph of this Endorsement shall be an additional insured solely with respect to such additional insured's liability for "bodily injury," property damage" or "personal and advertising injury" caused in whole or in part by your acts or omissions in the performance of "your work" for the additional insured on or at "commercial construction projects."

*See* Dkt. No. 106-1 at 47; Dkt. No. 106-2 at 50; Dkt. No. 106-3 at 51.

### C. Underlying Litigation

Out of the SSFUS construction project, a series of 17 lawsuits arose related to allegations of negligence and breach of contract, among other claims. Dkt. No. 97 ¶ 17. The cases were consolidated into a coordinated proceeding entitled *USS Cal School Construction Cases, Coordinated Proceedings*, San Francisco County Superior Court, Case No. CJC-17-004928, Judicial Council Coordination Proceeding No. 4928 (the "Underlying Litigation"). The Underlying Litigation ultimately settled in early 2025, and the proceedings were terminated on September 19, 2025. *See* Dkt. Nos. 109-11, 109-12, 109-13.

Relevant to the instant suit are a series of orders issued in the Underlying Litigation.[3]

---

[3] The parties submit three undisputed requests for judicial notice. *See* Dkt. Nos. 108, 118, 122. These requests comprise various public filings in the Underlying Litigation. Pursuant to Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts often take judicial notice of "matters of public record" and court filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The public filings detailed in the parties' requests comply with Rule 201, and so the Court properly takes notice of the filings and the undisputed contents therein.

United States District Court
Northern District of California

### 1.   February 10, 2020 Order on SSFUS's Motion for Summary Judgment

In the Underlying Litigation, SSFUS moved for summary judgment on USS Cal's breach of contract claims and request for statutory penalties.  Dkt. No. 104-1 at 6.  Granting the motion, the superior court held 15 of the 16 contracts between USS Cal and SSFUS were "unenforceable against the District" because the contracts had not been approved by the Board of Trustees, nor the Division of the State Architect, prior to commencement of the construction project.  *Id*. at 12-18.  As to the remaining contract, the court held the statute of limitations barred USS Cal's claims.  *Id*. at 27.

### 2.   May 20, 2021 Order on USS Cal's Demurrer

Subsequently, USS Cal demurred to SSFUS's Second Amended Cross-Complaint, particularly the second and third causes of action based on contractual breaches.  *Id*. at 279-80.  In a brief order, the superior court sustained USS Cal's demurrer based on the February 10 Order, noting that "the [c]ourt held the at-issue construction contracts were void."  *Id*. at 280.  Since the contracts were void, SSFUS also could not advance breach of contract claims against USS Cal.  *Id*. at 281.

### 3.   July 29, 2021 Order on Arch Insurance's Motion for Summary Judgment

Finally, on July 29, 2021, the court resolved a separate motion for summary judgment brought by Arch Insurance Company, who issued payment bonds for the school projects subject to the Underlying Litigation.  Dkt. No. 117-4 at 2-4.  There, Arch Insurance argued the payment bonds were invalid because they required the existence of a "public works contract" to be issued.  *Id*. at 9.  Since the court had determined the Prime Contracts between USS Cal and SSFUS were void, it followed that the payment bonds were similarly void.  *Id*.  The superior court disagreed with Arch Insurance's interpretation of California Civil Code § 9100(a) and denied the motion.  In so holding, the court relied on the language of the statute to conclude standing for a bond claim requires only that "all claimants must have provided work for a public works contract authorized by the requisite parties."  *Id*. at 10.  Whether the contracts were later voided was not dispositive of whether the claimants actually performed work on the contracts.  *Id*.  Given the parties did not

5

dispute the claimants had performed some work, the court held the claimants could still assert their bond claims. *Id.*

In the alternative, the court observed that "[e]ven if the [February 10] Order is relevant to claimants' standing under Civ. Code § 9100(a), the [c]ourt's MSJ order only found the prime LLB contracts were 'unenforceable *against the District*' under Ed. Code § 17604." *Id.* at 15 (emphasis in original). To the extent Arch Insurance relied on the February 10 Order for its position, the court clarified the Order had not addressed enforceability as to any other party. *Id.*

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on a "claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

"On cross motions for summary judgment, the burdens faced by opposing parties vary with the burden of proof they will face at trial." *Marker v. U.S. Dep't of Educ.*, No. 23-CV-05873-JSC, 2026 WL 145845, at *3 (N.D. Cal. Jan. 20, 2026) (quotation omitted). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Id.* (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)). "On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible 'evidence negating an essential element of the nonmoving party's case,' or by showing, 'after suitable discovery,' that the 'nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.'" *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 23-CV-04850-AMO, 2025 WL 2822685, at *2 (N.D. Cal. Oct. 2, 2025) (quoting *Nissan*

United States District Court
Northern District of California

*Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000)). "When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. *Id.* (citing Fed. R. Civ. P. 56(c), (e)). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

When resolving a summary judgment motion, courts must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor. *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, when a nonmoving party fails to produce evidence rebutting the moving party's showing, then summary adjudication is proper. *Nissan Fire*, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."). Lastly, "[t]he court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact." *Deckers Outdoor Corp.*, 2025 WL 2822685, at *2 (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

## DISCUSSION

The parties each seek summary judgment on the issue of whether Travelers and Rockhill owed USS Cal and Project Frogs a duty to defend in the Underlying Litigation. This dispute centers on the legal validity of the ASF, T3, Blazer, Valley Sheet, Young Electric, and Atlas subcontracts.

The validity of these subcontracts determines whether a duty to defend exists because each of the subcontractors' insurance policies only apply to Additional Insureds when a written contract to extend coverage exists between the subcontractor and the Additional Insured. *See* Dkt. No. 97 ¶ 14 (Travelers policy covering only a "person or organization that you agree in a 'written contract requiring insurance' to include as an additional insured"); Dkt. No. 106-1 at 47 (Rockhill policy covering only "[a]ny person or organization to which you are obligated by virtue of a written contract to provide insurance"). Absent a written contract between the subcontractors and USS Cal/Project Frogs requiring coverage as Additional Insureds, Travelers and Rockhill owed no duty

United States District Court
Northern District of California

to defend those entities in the Underlying Litigation.  Accordingly, if no valid subcontracts exist, Travelers and Rockhill may seek reimbursement of defense costs they advanced subject to a reservation of rights.  *See Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 658 (2005) ("By law applied in hindsight, courts can determine that no potential for coverage, and thus no duty to defend, ever existed.  If that conclusion is reached, the insurer, having reserved its right, may recover from its insured the costs it expended to provide a defense which, under its contract of insurance, it was never obliged to furnish.").

USS Cal and Project Frogs challenge this analysis, arguing the duty to defend in the Underlying Litigation was, at most, "extinguished," thereby rendering *Scottsdale* inapposite.  Dkt. No. 124 at 12.  Under their view, the "duty to defend existed *at least* between the dates [Travelers] accepted USS Cal's and Project Frog's tenders and the date the Superior Court issued the [February 10 Summary Judgment Order]," since the underlying complaint indicated potential coverage.  *Id*. (emphasis in original).  The Court disagrees.  Here, the insurers argue the February 10 Order voided the Prime Contracts, and by necessary implication, also voided the subcontracts. If Travelers and Rockhill are correct, the effect is not that the duty to defend terminated from the date of the superior court's order, but rather that no contract between USS Cal, Project Frogs, and the subcontractors existed in the first place.  Indeed, a void contract is no contract at all and has no legal effect.  *See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 929-30 (2016).  Absent such an agreement, there was never any Additional Insured coverage owed to USS Cal and Project Frogs in the first place.  This is precisely the kind of determination identified in *Scottsdale*, which looked to the origin of the asserted duty to defend and found no legal basis for that duty.

To determine whether a valid agreement existed to create a duty to defend, the Court first considers whether the superior court in the Underlying Litigation held the Prime Contracts were void.  Finding the Prime Contracts void, the Court then addresses the legal effect of that voidness on the ASF, T3, Blazer, Valley Sheet, Young Electric, and Atlas subcontracts.

However, prior to commencing the analysis, the Court reiterates that the parties do not dispute Epic's insurance policy with Travelers did not contain an Additional Insured provision. USS Cal and Project Frogs have not offered any evidence that either entity was a Named Insured

8

United States District Court
Northern District of California

under the policy.  Nor have they advanced any argument as to how the Epic policy—absent an Additional Insured provision—would create a duty to defend in the Underlying Litigation.  The Court's analysis need not further address the Epic policy, and on this basis, Travelers' and Rockhill's motion for summary judgment is partially **GRANTED**.  The Epic policy did not create a duty to defend USS Cal or Project Frogs because they were neither Named Insureds nor Additional Insureds under the policy.

The Court now turns to its analysis as to the remaining subcontractors.

## I.    VALIDITY OF THE PRIME CONTRACTS

To start, the parties dispute the effect of the superior court's rulings in the Underlying Litigation.  Travelers and Rockhill contend the court determined the Prime Contracts were void.  USS Cal and Project Frogs argue the superior court only held the Prime Contracts were unenforceable against SSFUS, i.e. the Prime Contracts were declared *voidable*, not *void*.  *See Yvanova*, 62 Cal. 4th at 929-30 (2016) ("A void contract is without legal effect.  'It binds no one and is a mere nullity.'"  Whereas "[a] voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.'").  The validity of the Prime Contracts is a threshold question, as the validity of the subcontracts depends, in part, on whether the Prime Contracts upon which they were based are void.   Here, the Court finds no genuine issue of material fact as to the superior court's holding: the Prime Contracts are void.

Three orders from the Underlying Litigation bear on this question.  The February 10 Order granting SSFUS's motion for summary judgment declared the Prime Contracts "unenforceable against the District." Dkt. No. 104-1 at 13.  In various footnotes, the court indicates its holding is not simply that the Prime Contracts are voidable, but rather void as to both parties.  For instance, in footnote 6, the court quotes *Reams v. Cooley*, 171 Cal. 150, 153-54 (1915), for the proposition that the Prime Contracts are not "invalid merely by some reason of some irregularity or some invalidity in the exercise of a general power to contract, but the [contracts are] void because the statute prescribes the only method in which a valid contract can be made . . . ."  Dkt. No. 104-1 at

11. Similarly, in footnote 17, the superior court succinctly addresses an argument from the briefing, and clarifies the contracts at issue "are void, not voidable." *Id*. at 21. Though the opinion uses varied terminology, the reasoning makes clear that SSFUS had no power to enter into the Prime Contracts, and therefore, the contracts are void.

This reading finds support in the superior court's May 20, 2021 Order sustaining USS Cal's demurrer to SSFUS's Second Amended Cross-Complaint. There, the court summarized the holding from its February 10 Order: "The Court held the at-issue construction contracts were void." *Id*. at 280. To further support its reasoning, the court explained it is "axiomatic that a breach of contract claim cannot lie when the contracts are deemed void," and that principle warranted dismissal of SSFUS's contract claims. *Id*. at 281.

A few months thereafter, on July 29, 2021, the superior court denied a motion for summary judgment brought by Arch Insurance, the entity which provided payment bonds for the construction project. There, the court referred to the February 10 Order to respond to Arch Insurance's argument that the claimants lacked standing to enforce the payment bonds. Dkt. No. 117-4 at 15. The Court concluded the February 10 Order did not address whether the Prime Contracts were "enforceable as to any other party or whether [the Prime Contracts relate] to the bond claims." *Id*. Now, USS Cal and Project Frogs seize on this language to argue the superior court did not determine the Prime Contracts were void, but rather they were only unenforceable against the District. Dkt. No. 116 at 15. This interpretation lacks merit.

Both USS Cal and Project Frogs fail to account for the context of the superior court's statements within the July 29 Order. Prior to the court's analysis of the February 10 Order, it had articulated how California Civil Code § 9100(a) permitted claimants to enforce the payment bonds because they had actually performed work on the construction project. Dkt. No. 117-4 at 10. A retroactive determination that the public works contracts at issue were void did not dispose of the claims because the statutory language prioritized performance of work. *Id*. Accordingly, the superior court viewed any prior voidness ruling as inapplicable to its resolution of Arch Insurance's motion. For this reason, the court addressed the February 10 Order as an argument in the alternative, stating "even if the MSJ Order is relevant to claimants' standing," the February 10

10

Order did not speak directly to the issue of payment bonds. *Id*. at 15. The superior court's clarification of the February 10 Order was not to reverse its prior voidness holding—it only noted the order had not addressed the effect of the voided Prime Contracts on any other party relevant to the Arch Insurance motion, i.e. Arch Insurance or the bond claimants.

A coherent reading of the three relevant superior court orders indicates no genuine issue of material fact as to whether the Prime Contracts are void. Having established voidness, the Court now considers the effect on the subcontracts at issue. [4]

## II.    VALIDITY OF THE SUBCONTRACTS

Travelers and Rockhill argue four grounds for determining the subcontracts are void: 1) the subcontracts lack a lawful object; 2) the subcontracts were impossible to perform; 3) the subcontracts lacked consideration; and 4) the purpose of the subcontracts was frustrated. The Court addresses only the parties' arguments as to the lawful object of the subcontracts, as the motion may be resolved on that basis alone.

Here, as a matter of law, the subcontracts are void for lack of a lawful object. California Civil Code § 1596 provides: "The object of a contract must be lawful when the contract is made, and possible and ascertainable by the time the contract is to be performed." "Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." Cal. Civ. Code § 1598. The Civil Code defines "unlawful" to mean:

> 1. Contrary to an express provision of law;
>
> 2. Contrary to the policy of express law, though not expressly prohibited; or,
>
> 3. Otherwise contrary to good morals.

Cal. Civ. Code § 1667. California courts applying this doctrine have observed: "[t]he law has a long history of recognizing the general rule that certain contracts, though properly entered into in all other respects, will not be enforced, or at least will not be enforced fully, if found to be contrary

---

[4] The Court does not address Travelers' arguments with respect to collateral or judicial estoppel of USS Cal's and Project Frogs' Prime Contract validity position. On the merits, the Court determines the superior court declared the Prime Contracts void, and so the issue may be resolved on that basis.

United States District Court
Northern District of California

to public policy." *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 540 (2004) (citation omitted). As applied to the instant case, the "object" of the subcontracts was in violation of California statute.

To begin, Travelers and Rockhill have submitted evidence that the "object" of the subcontracts was performance of the Prime Contracts. For instance, in the ASF subcontract with USS Cal, the parties incorporated the terms of the relevant Prime Contracts and stated, "the rights and obligations of the subcontractor to [USS Cal] are identical to the rights and obligations of [USS Cal] to [SSFUS]." Dkt. No. 104-50 at 1. Further, the "Scope of Work" required ASF "to furnish and install all materials and labor . . . as per the [Division of the State Architect] Approved Plans and Specifications by QKA Architects . . . ." *Id*. This work was required to comply with "Ed Specifications," "Geotechnical Reports," and "South San Francisco Unified School District Standards" identified in the contract. *Id*. at 2. Critically, the additional subcontracts between USS Cal and the other subcontractors are materially the same in these respects. *See* Dkt. Nos. 104-57, 104-58, 104-59, 104-60. Ultimately, there is no genuine dispute that the subcontracts obligated ASF, and the other subcontractors, to perform a subset of USS Cal's obligations under the Prime Contracts.

So, the Court now considers whether the "object" of the subcontracts—namely, to perform a subset of obligations from the Prime Contracts—was unlawful. The superior court's analysis in the February 10 Order provides an essential foundation. As noted previously, the superior court held the Prime Contracts were void because they violated certain provisions of the Education Code. Dkt. No. 109-4 at 8-16. Specifically, the court looked to California Education Code §§ 17307 and 17297 to determine the Prime Contracts had to be approved by the Division of the State Architect prior to contracting. *Id*. at 8-9. The court concluded the statutes represent a "strong public policy interest in requiring [Division of the State Architect] approval *prior* to entering a contract to ensure safe building for students." *Id*. at 10 (emphasis in original). Because the Prime Contracts violated Sections 17307 and 1797, among others, the superior court determined the contracts were void. *Id*. at 10-11. Turning to the subcontracts, to the extent the "object" of those agreements is to complete some portion of the Prime Contracts, the subcontracts

12

would facilitate continued violation of the Education Code provisions identified by the superior court. To wit: if the Prime Contracts are void for violating California statutes, then the subcontracts, whose only "object" is to perform a portion of the Prime Contracts, are similarly void.

In opposition, USS Cal and Project Frogs raise two arguments—neither is persuasive. First, they contend the provisions of the subcontracts that incorporate the Prime Contracts can be severed to save the agreements. California Civil Code § 1599 states: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Elaborating on this provision, the California Supreme Court has similarly observed, "[w]hether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties." *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 122 (2000) (citation omitted). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id*. at 124.

USS Cal and Project Frogs have failed to establish a genuine dispute of material fact as to severability, since neither has directed the Court to any evidence in the record indicating the subcontracts had an "object" other than performance of the Prime Contracts. Though USS Cal and Project Frogs posit the "object" of the agreements was "establishing responsibility and performance standards for the construction and renovation of buildings on District campuses," their only citation is to portions of the Sultan Declaration that say nothing about the parties' understanding of the subcontracts' "object." Dkt. No. 124 at 19 (citing Dkt. Nos. 114, 114-1.) Even accepting this unsupported statement, USS Cal and Project Frogs have merely re-worded the Court's identified "object": performance of the Prime Contracts. "Construction and renovation of buildings on District campuses" *is precisely* what the Prime Contracts set out to do.

USS Cal's and Project Frogs' reliance on *Van Der Valk v. Shell Oil Co.*, 233 F. App'x 752

(9th Cir. 2007), takes them no further. In that unpublished decision, the Ninth Circuit considered whether res judicata applied to the plaintiff's contract claims involving multiple, distinct franchise agreements. *Id*. at 753-54. The court determined res judicata did not apply because a state court suit involving one of the franchise agreements did not implicate the same "primary right" as the other franchise agreements. *Id*. at 754. As applied here, USS Cal and Project Frogs effectively argue the Prime Contracts and the subcontracts implicate different primary rights. This is a strained reading of *Van Der Valk*, which dealt with a completely different legal issue than the one presented here. But even if *Van Der Valk* were applicable, USS Cal and Project Frogs do not articulate what the distinct "primary rights" are between the Prime Contracts and subcontracts. Here, too, USS Cal and Project Frogs have failed to carry their burden to establish, as a matter of law, performance of the Prime Contracts is a severable "object" from the subcontracts, or that a dispute of material fact exists as to severability.

As for the second counterargument, USS Cal and Project Frogs assert that, even if initially void, the parties' conduct established validity. In support, they cite *U.S. ex rel. Oliver v. Parsons Co.*, a False Claims Act case in which the defendant was alleged to have inflated overhead rates charged to the federal government. 195 F.3d 457, 461 (9th Cir. 1999). The alleged scheme involved Parsons subcontracting certain work to a wholly-owned subsidiary. *Id*. One theory advanced by the plaintiff was that there was no valid subcontract between Parsons Engineering and the wholly-owned subsidiary because a subcontract between the two entities had expired. *Id*. at 462. The Ninth Circuit held "a valid subcontract existed because the parties' continued performance under the terms of the written contract was sufficient to prove the continued existence of the contract." *Id*. By analogy to *Oliver*, USS Cal and Project Frogs argue the parties' continued performance of the subcontracts here established valid agreements irrespective of the superior court's determination of voidness. Dkt. No. 124 at 20-21. But *Oliver* differs importantly from the instant case. There, the contract had expired by virtue of its own terms, yet the conduct of the parties implied an extension of an otherwise extinguished obligation. *Oliver*, 195 F.3d at 462. Here, neither the Prime Contracts nor the subcontracts "expired"; they are void. A void contract is critically different from a lawful contract that expires by its own terms. "Because an

illegal contract is void, it *cannot be ratified* by any subsequent act." *Black Hills Invs., Inc. v. Albertson's, Inc.,* 146 Cal. App. 4th 883, 896 (2007) (alterations in original).  Whatever subsequent acts were taken by USS Cal, Project Frogs, SSFUS, or the subcontractors, those acts cannot ratify a legally void agreement.  Therefore, *Oliver* is inapposite.

* * *

Based on the foregoing analysis, Travelers and Rockhill have shown, as a matter of law, the subcontracts are void.  Further, USS Cal and Project Frogs have not carried their burden to show the subcontracts can be salvaged either by severing certain provisions related to the Prime Contracts or finding a contract implied through conduct.  Nor have USS Cal or Project Frogs shown a genuine issue of material fact as to either question.  Since the subcontracts are void, the Additional Insured Endorsements to the ASF, T3, Blazer, Valley Sheet, Young Electric, and Atlas insurance policies did not extend coverage to USS Cal and Project Frogs.  Therefore, Travelers and Rockhill did not owe USS Cal and Project Frogs a duty to defend in the Underlying Litigation.

## CONCLUSION

For these reasons, USS Cal's and Project Frogs' motion for partial summary judgment on the duty to defend is **DENIED**.  Travelers' and Rockhill's motion for partial summary judgment on the duty to defend is **GRANTED**.  Travelers' motion for partial summary judgment against Rockhill, regarding Rockhill's duty to defend in the Underlying Action is **DENIED**.  Rockhill's motion for partial summary judgment against Travelers, regarding Rockhill's duty to defend in the Underlying Action is **GRANTED**.  By **July 16, 2026**, the parties shall prepare and file a form of judgment for the Court to enter in this matter.

**IT IS SO ORDERED.**

Dated: July 9, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

United States District Court
Northern District of California

15